UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELVIN McCOY MILES,

                              Petitioner,

            - against -

ROBERT ERCOLE, Superintendent, Green Haven
Correctional Facility,

                              Respondent(s).

09 Civ. 1513 (KMK) (PED)

**REPORT AND
RECOMMENDATION**

TO:   THE HONORABLE KENNETH M. KARAS,
      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Melvin McCoy Miles ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254, from his April 27, 2006 conviction entered in Dutchess County

Court (Hayes, J.). Petitioner was convicted, after a trial by jury, of one count each of attempted

murder in the second degree, burglary in the first degree, and robbery in the first degree, and two

counts of assault in the first degree. Petitioner was sentenced, *inter alia*, as a second felony

offender to concurrent, determinate terms of imprisonment ranging between eight and twenty-

one years. This petition comes before me pursuant to an Order of Reference dated February 26,

2009. (Docket No. 2). For the reasons set forth below, I respectfully recommend that this

petition be **DENIED**.

## II. BACKGROUND

A.     **The Crime**[1]

---

[1] The facts within this section are taken from Respondent's Affidavit in Answer to a
Petition for a Writ of Habeas Corpus (hereinafter "Resp't Aff.") (Docket No. 5), Appellant
Melvin Miles' Main Brief (hereinafter "Appellant Br.") (attached to Resp't Aff., at Ex. 21), and
Respondent's Brief (attached to Resp't Aff., at Ex. 22). All exhibits cited herein are to Resp't

The facts related to the underlying criminal offenses may be briefly summarized.  In the early morning hours of June 25, 2005, Sandra Perry ("Perry") and Joseph Williams ("Williams") were each violently beaten with a blunt object in an apartment on Mansion Street in the City of Poughkeepsie, New York.  The couple received traumatic injuries, including multiple facial fractures and concussions.  Williams was hospitalized for a week and suffered long-term hearing damage.  Perry was hospitalized and in rehabilitation for several months and suffered partial paralysis and serious brain injuries.

Prior to the attack, Perry and Petitioner were in a romantic relationship.  Perry ended that relationship and soon after began a relationship with Williams.  At trial, both victims testified and identified Petitioner as the attacker.  A third witness, Alan Provenzano ("Provenzano"), testified that he slept in the second bedroom of the Mansion Street apartment on the night of the attack.  Petitioner woke him and Provenzano recognized Petitioner by his face as Perry's ex-boyfriend.  When Petitioner left the room, Provenzano heard footsteps in the hallway and then bludgeoning sounds in the other bedroom and hallway.  About five minutes later, Williams staggered into Provenzano's bedroom and told him to call 911.  Provenzano left the apartment, went to a nearby gas station, and anonymously called 911.  He left the station, walked past the Mansion Street residence, and noticed police activity.  Although an officer stopped and questioned Provenzano, Provenzano told the officer he knew nothing about what happened in the apartment.  Later that morning, Provenzano changed his mind and voluntarily went to a police station.  He told detectives he did not know the attacker's name but provided a physical description.  He stated he generally knew the attacker from the homeless community and that he

Aff. (Docket No. 5).

knew he was Perry's ex-boyfriend.  Based on the physical description, police had Provenzano

review a mugshot database.  After viewing over one hundred photos, Provenzano positively

identified Petitioner.

Later that day, police visited areas frequented by homeless individuals.  They spotted

Petitioner and asked him to come to the police station for questioning.  Petitioner agreed to go

and was handcuffed before being placed in the police vehicle.  At some point thereafter, while

still handcuffed, Petitioner told police the location where he was currently squatting.  Police

drove Petitioner to this location, asked him if any of the clothing in the area belonged to him,

and seized several storage containers and other clothing Petitioner identified as his.

At the police station, Petitioner was unhandcuffed and read his <u>Miranda</u>[2] rights.  He

waived his rights and admitted he knew Perry and Williams, that he and Perry were recently in a

relationship, and that he knew Williams was staying at a residence on Mansion Street.  He also

informed police that he was drinking heavily the day before.  Police then formally arrested

Petitioner.  Incident to arrest, Petitioner was searched and police found Perry's social security

card and several pieces of jewelry on his person.  Perry identified the objects as hers at trial and

confirmed that at least some of the objects were in her possession on the night of the attack.

Police also secured a search warrant to examine the items previously removed from the squat.

**B.**     **Pretrial Hearings, Trial, Verdict, and Sentencing**

Petitioner was indicted on eleven counts, including attempted murder, assault, burglary,

robbery, and stalking charges.  (Ex. 2).  By pretrial omnibus motion, Petitioner, through counsel,

moved to suppress physical evidence and statements made to police.  (Ex. 5).  By supplemental

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

motion, Petitioner moved to invalidate the search warrant and to preclude identification

testimony by Provenzano on the grounds that the State failed to provide proper notice pursuant

to N.Y. Crim. Proc. Law §§ 710.30(1)(b), 710.30(3), and People v. Rodriguez, 79 N.Y.2d 445

(1992).[3] (Ex. 7). The court ordered a pretrial hearing. (See Exs. 9-10). During the hearing, a

testifying detective revealed that he used a notebook during the course of his investigation, and

stated it that could be possible that an officer who initially spoke to Provenzano in front of the

crime scene had made a report about the conversation. (Dec. 19, 2005 Hr'g Tr., at 52, 62-64

(Ex. 11)).[4] Defense counsel objected that these documents were not disclosed as Rosario[5]

---

[3]

      Whenever the people intend to offer at a trial . . . testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

N.Y. Crim. Proc. Law § 710.30(1)(b).

      In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial unless he has, despite the lack of such notice, moved to suppress such evidence and such motion has been denied and the evidence thereby rendered admissible . . . .

Id. § 710.30(3). Under New York law, if a witness recognizes a defendant due to prior acquaintance or familiarity with the defendant, the State is not required to provide the defendant with the notice requirement provided in § 710.30. Rodriguez, 79 N.Y.2d at 450-51.

  [4] The officer stated that the notes he wrote in his notebook related only to potential contact information of people who knew the victims. (See Dec. 19, 2005 Hr'g Tr., at 52-55).

  [5] People v. Rosario, 9 N.Y.2d 286 (1961). Rosario requires prosecutors to make available for examination by a criminal defendant any written or recorded statements of a witness whom the prosecutor will call to testify at trial when those prior statements relate to the subject matter of the witness's testimony. See N.Y. Crim. Proc. Law §§ 240.44, 240.45 (codifying the holding in Rosario).

material.  (See id. at 52-55, 62-64).  The next day, the prosecutor told the court that she spoke to

all law enforcement involved in the case, confirmed that the notebook did not contain Rosario

material, and confirmed that no other undisclosed report existed.  (Dec. 20, 2005 Hr'g Tr., at 2-3

(Ex. 11)).

   After the hearing, the parties submitted additional written briefs.  (Exs. 13-14).  The court

then determined that the identification by Provenzano was confirmatory and therefore § 710.30

notice was not required.  The court also held that probable cause existed for Petitioner's arrest

and it denied the motion to suppress evidence seized as a search incident to arrest.  The court

granted the motion to suppress statements made by Petitioner while he was handcuffed at his

squat.  It denied the motion to suppress statements he made while at the police station in light of

his Miranda waiver.  (Ex. 15).

   Petitioner's jury trial lasted several days.  On February 9, 2006, the jury returned a

verdict finding Petitioner guilty of attempted murder in the second degree, in violation of N.Y.

Penal Law §§ 110.00, 125.25(1);[6] assault in the first degree, in violation of N.Y. Penal Law §

120.10(1);[7] assault in the first degree, in violation of N.Y. Penal Law § 120.10(4);[8] burglary in

---

[6] "A person is guilty of murder in the second degree when . . . [w]ith intent to cause the
death of another person, he causes the death of such person or of a third person . . . ."  N.Y.
Penal Law § 125.25(1).  "A person is guilty of an attempt to commit a crime when, with intent to
commit a crime, he engages in conduct which tends to effect the commission of such crime."  Id.
§ 110.00.

[7] "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious
physical injury to another person, he causes such injury to such person or to a third person by
means of a deadly weapon or a dangerous instrument . . . ."  N.Y. Penal Law § 120.10(1).

[8] "A person is guilty of assault in the first degree when . . . [i]n the course of and in
furtherance of the commission or attempted commission of a felony or of immediate flight
therefrom, he . . . causes serious physical injury to a person . . . ."  N.Y. Penal Law § 120.10(4).

the first degree, in violation of N.Y. Penal Law § 140.30(2);[9] and robbery in the first degree, in violation of N.Y. Penal Law § 160.15(1).[10]  (See Resp't Aff. ¶ 16).

Petitioner thereafter moved to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30(1)[11] on the grounds that the evidence adduced at trial was legally insufficient to support the verdict, and that the court erred in denying Petitioner's pretrial motion to suppress physical evidence. (Ex. 16). The motion was denied. (Ex. 18).

On April 27, 2006, Petitioner was sentenced as a second felony offender[12] to the following concurrent terms of imprisonment: twenty-one years on the attempted murder conviction, twenty-one years on the assault conviction related to Perry, twelve years on the assault conviction related to Williams, and eight years each on the burglary and robbery convictions.  (See Sentencing Tr. (Ex. 19)).

## C.    **Direct Appeal**

---

[9] "A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, . . . while in the dwelling . . . , he . . . [c]auses physical injury to any person . . . ." N.Y. Penal Law § 140.30(2).

[10] "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime . . . , he . . . [c]auses serious physical injury to any person . . . ." N.Y. Penal Law § 160.15(1).

[11]

> At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon . . . [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.

N.Y. Crim. Proc. Law § 330.30(1).

[12] Petitioner was convicted in 1995 of criminal sale of a controlled substance in the fifth degree. (See Sentencing Tr., at 3-4 (Ex. 19); Appellant Br., at 51-52).

Petitioner, through his appellate counsel,[13] appealed his conviction to the New York State Appellate Division, Second Department, on the following grounds:

(1)     the hearing court erred in denying Petitioner's motion to suppress physical evidence because the arrest was not based on probable cause;
(2)     the conviction was against the weight of credible evidence;
(3)     the evidence was legally insufficient to support the conviction;
(4)     the State wrongfully withheld Rosario material;
(5)     Petitioner's confrontation clause rights were violated when the trial court limited the scope of defense counsel's cross-examination of a witness;
(6)     the hearing court erred in determining that Provenzano's prior identification was confirmatory and therefore the identification should have been suppressed; and
(7)     excessive sentence.

(See Appellant Br.).  The Second Department affirmed the judgment in a written decision on October 30, 2007.  People v. Miles, 843 N.Y.S.2d 836 (App. Div. 2007).  Petitioner sought leave to appeal to the New York Court of Appeals, and leave was denied on January 14, 2008.  People v. Miles, 9 N.Y.3d 1036 (2008).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, nor has he filed motions in state court for collateral relief.  (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, at 2-3 (hereinafter "Pet.") (unpaginated) (Docket No. 1)).[14]

**D.     *Habeas Corpus* Proceedings**

By petition dated September 28, 2009, Petitioner filed for a writ of *habeas corpus*,[15] raising the same claims that were raised on direct appeal.  (See id.)

---

[13] Petitioner was represented by different counsel on appeal.

[14] The petition also states that Petitioner intends to file a motion pursuant to N.Y. Crim. Proc. Law § 440.30 at some point in the future.  (See Pet., at 3-4).  However, Petitioner has never requested leave to amend his petition or stay the proceedings since he filed his petition in 2009.  Accordingly, I address the petition as it is filed.

[15] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1)-(2).

## III. DISCUSSION

**A.      Applicable Law on *Habeas Corpus* Review**

"Habeas review is an extraordinary remedy." <u>Bousley v. United States</u>, 523 U.S. 614,

621 (1998) (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with  § 2254(d).  The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

### 1.      *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations.  <u>See</u> 28 U.S.C. § 2244(d).  The statute provides four different potential starting

points for the limitations period, and specifies that the latest of these shall apply.  <u>See id.</u> §

2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition.  <u>See id.</u> § 2244(d)(2).  The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct

8

review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by
State action in violation of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized by
the Supreme Court and made retroactively applicable to cases on collateral
review; or
(D) the date on which the factual predicate of the claim or claims presented
could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction
or other collateral review with respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida,

130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

2.      ***Exhaustion Requirement***

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his

9

claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented"). The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails

to meet a state's requirements to exhaust a claim will be barred from asserting that claim in

federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain

unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise

its discretion to review and deny a mixed petition containing both exhausted and unexhausted

claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277

(2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied

on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004)

11

(interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.     *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4.     *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

12

adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." § 2254(e)(1).

Where the state court "did not reach the merits" of the federal claim, then "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*." Cone v. Bell, 129 S. Ct. 1769, 1784 (2009); see § 2254(d).

**B.**     **Analysis of Petitioner's Claims**

1.   ***Fourth Amendment (Claim 1)***[16]

Petitioner asserts that the hearing court erred in denying his motion to suppress physical evidence obtained as a result of an unlawful seizure. (See Appellant Br., at 54-58). Specifically, Petitioner argues that Provenzano's statements to police did not amount to probable cause because Provenzano was an incredible witness. (See id.) Respondent contends that this claim is unreviewable pursuant to the Stone v. Powell doctrine. (See Resp't Mem., at 6-9).

In Powell, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); see also, e.g., Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]"). Fourth Amendment claims may not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

---

[16] I identify the claims as I have numbered them in Section II(C) above.

14

Petitioner does not – nor could he – contend that New York failed to provide corrective procedure to redress his alleged Fourth Amendment claims. Indeed, as the Second Circuit has noted, "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* . . . , as being facially adequate." Id. at 70 n.1 (internal quotation marks and citation omitted).

Rather, Petitioner seemingly argues an unconscionable breakdown occurred when the trial court denied that part of his motion seeking to suppress the evidence. The argument is unfounded. "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." Valtin v. Hollins, 248 F. Supp.2d 311, 317 (S.D.N.Y. 2003). Where a petitioner was provided "an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal review." Graham, 299 F.3d at 134. In this case, no breakdown in procedure occurred: Petitioner argued his Fourth Amendment claim through pretrial motion, a pretrial hearing was conducted, post-hearing memoranda were submitted, and the issue was again raised in Petitioner's motion to set aside the verdict and on direct appeal. "[M]ere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process in violation of the petitioner's Fourth Amendment rights." Cook v. Donnelly, No. 02-cv-6073, 2009 WL 909637, at *5 (W.D.N.Y. Mar. 31, 2009) (citing Capellan, 975 F.2d at 71).[17] Accordingly, Petitioner's claim must be denied.

---

[17] Copies of unreported cases cited herein will be mailed to Petitioner. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

15

2.     *Weight of the Evidence (Claim 2)*

Petitioner asserts that his conviction was against the weight of credible evidence adduced at trial. (See Appellant Br., at 59-62). Respondent contends that this claim is not cognizable upon federal *habeas* review. (See Resp't Mem., at 32-33).

It is well-established that a weight of the evidence claim is exclusively a matter of state law and does not present a federal question. See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Garrett v. Perlman, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").[18]  Accordingly, the claim must be denied.

3.     *Legally Insufficient Evidence (Claim 3)*

Petitioner's third claim asserts that the evidence adduced at trial was legally insufficient to support his conviction. (See Appellant Br., at 59; see also Ex. 16). Respondent contends that the federal nature of this claim was not fairly presented to the state's highest court. Specifically,

---

[18] I also note that Petitioner's argument primarily challenges the credibility of certain witnesses. Issues of credibility are unreviewable by this Court. See Garrett, 438 F. Supp.2d at 470; see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for [review] on [habeas] appeal").

Respondent argues that the appellate brief's mere reference to the Due Process Clause of the Fourteenth Amendment and single citation to a Supreme Court case was insufficient to alert the state court to the federal nature of the claim. (See Resp't Mem., at 15-16). In the alternative, Respondent argues that the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (See id. at 16-32).

In this case, the appellate brief was sufficient to alert the state court to the federal nature of the claim. In its written opinion, the Second Department specifically and unambiguously identified and denied the relevant federal constitutional claim. See Miles, 843 N.Y.S.2d at 836.[19] Accordingly, I address the claim pursuant to AEDPA deference.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted). However, on *habeas* review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. A *habeas* petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the

---

[19] The opinion reads in pertinent part:

> "Contrary to the defendant's contention, viewing the evidence in the light most favorable to the prosecution, and affording it the benefit of every favorable inference to be drawn therefrom, (see Jackson v. Virginia, 443 U.S. 307, 319 [1979] . . . ), there was legally sufficient evidence to establish the defendant's guilt beyond a reasonable doubt."

Miles, 843 N.Y.S.2d at 836 (internal and parallel citations omitted).

offense beyond a reasonable doubt and succeed on such a claim. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (internal quotation omitted). In addition, "[w]hen it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Id. (internal quotation omitted).

Petitioner has failed to establish that, at the time he was tried, no reasonable juror could have convicted him of either attempted murder in the second degree, assault in the first degree, burglary in the first degree, or robbery in the first degree. The record indicates that there was sufficient evidence from which a rational jury could find each element of these offenses beyond a reasonable doubt. (See supra nn. 6-10 (listing the elements of the offenses)). Both victims testified and identified Petitioner as the attacker. (See Trial Tr., at 768-69, 1068-69 (Docket Nos. 7-8)). Provenzano also testified that Petitioner was in the apartment and that Petitioner exited the bedroom moments before he heard bludgeoning sounds and saw a bloodied Williams stumble into the room. (See id. at 587-97, 1072). The severity of the beating and a variety of other circumstantial evidence was presented to show Petitioner's intent, including evidence: that Petitioner and Perry recently ended their relationship, (see id. at 759-64, 828, 1063-64); that Petitioner wanted the relationship to resume but Perry did not because she wanted to continue her new relationship with Williams, (see id. at 759-64, 773-74, 848-49, 852); that Petitioner and Perry argued recently before the attack, (see id. at 763-64, 774-75, 828-34, 838-40, 851-52); that Petitioner told a third party he wanted to hurt or kill Perry, (see id. at 856); that the apartment was under renovation and strewn with tools, lumber, and other equipment, (see, e.g., id. at 459-61; 766); that the crime scene after the attack contained smears of blood on the walls, puddles of blood on the floor, and blood on pieces of lumber found near Perry's body, (see, e.g., id. at 477, 482-83, 490, 637-39); and that the victim's injuries were caused by blunt force and included

18

multiple broken bones, concussions, lacerations, bruises, hearing loss, head and brain trauma, and paralysis, (see, e.g., id. at 726-45, 778, 899-914, 1085-86, 1089; see also Resp't Mem., at 19-31).  A witness testified that Petitioner knew Perry and Williams were staying at the Mansion Street apartment together.  (See id. at 774, 844-47, 1072).  Both victims and Provenzano testified they did not give Petitioner permission to enter the apartment.  (See id. at 1072).  Evidence also established that Perry's personal items were found on Petitioner and that Perry had not given Petitioner permission to take at least some of those items.  (See id. at 1080-84).  The credibility of the witnesses' testimonies are decisions to be made by the jury and are not reviewable by a federal *habeas* court.  See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); see also United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) ("In analyzing a sufficiency of the evidence claim, 'we defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'").  Accordingly, the state court did not unreasonably apply Jackson or other Supreme Court precedent in denying this claim.

### 4.   **Rosario** *(Claim 4)*

Petitioner asserts the prosecutor wrongfully withheld certain Rosario material. Specifically, he argues that a detective's notebook was not produced and that the court erred in accepting the prosecutor's word that she reviewed the notebook and determined it did not contain relevant information.  (See Appellant Br., at 62-63).  Respondent contends, in part, that this claim fails to state a federal question.  (See Resp't Mem., at 33-37).

It is well-settled that alleged violations of New York's Rosario rule arise exclusively under state law and therefore do not present a federal question.  See, e.g., Collins v. Artus, 496 F.

19

Supp.2d 305, 317 (S.D.N.Y. 2007) ("A violation of <u>Rosario</u> does not present a federal

constitutional question upon which federal habeas corpus relief can be premised."); <u>Green v.</u>

<u>Artuz</u>, 990 F. Supp. 267, 274 (S.D.N.Y. 1998) ("the failure to turn over <u>Rosario</u> material is not a

basis for habeas relief as the <u>Rosario</u> rule is purely one of a state law"). Accordingly, this claim

must be denied.

      **5.**      ***Confrontation Clause (Claim 5)***

Petitioner asserts the trial court improperly limited the scope of defense counsel's cross-

examination of a witness. Specifically, he argues that the court prevented counsel from asking

Williams why he and Perry were not on speaking terms at the time of trial. (<u>See</u> Appellant Br.,

at 63-63). He states that this questioning was relevant for purposes of Williams's credibility, to

show bias, and to suggest that it was Williams himself who attacked Perry. (<u>See id.</u>)

Respondent contends that the state court's decision denying this claim was neither contrary to,

nor an unreasonable application of, clearly established federal law. (<u>See</u> Resp't Mem., at 37-42).

The Confrontation Clause of the Sixth Amendment of the U.S. Constitution guarantees

the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const.

Amend. VI. This right of confrontation embodies the right of the defendant to "a meaningful

opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)

(quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)). This right also "means more than

being allowed to confront the witness physically." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678

(1986) (quoting <u>Davis v. Alaska</u>, 415 U.S. 308, 315 (1974)). Specifically, it includes the

"opportunity of cross-examination." <u>Id.</u> (quoting <u>Davis</u>, 415 U.S. at 315-16) (emphasis omitted).

This right, however, is not absolute. <u>See, e.g.</u>, <u>Taylor v. Illinois</u>, 484 U.S. 400, 411 (1988);

<u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973); <u>Washington v. Schriver</u>, 255 F.3d 45, 55 (2d

20

Cir. 2001); see also Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in

original) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination,

not cross-examination that is effective in whatever way, and to whatever extent, the defense

might wish"). It "may, in appropriate cases, bow to accommodate other legitimate interests in

the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Rock v.

Arkansas, 483 U.S. 44, 55 (1987)).  Specifically, a state court may exclude evidence in order to

prevent "harassment, prejudice, or confusion of the issues," Crane, 476 U.S. at 689-90 (quoting

VanArsdall, 475 U.S. at 679), or otherwise "through the application of evidentiary rules that

serve the interests of fairness and reliability," Wade v. Mantello, 333 F.3d 51, 58 (2d Cir. 2003).

The Second Circuit has established a two-part test to assist federal *habeas* courts in

determining, under AEDPA, whether a claim involving the right to present a complete defense

warrants relief.  First, the court must assess "the propriety of the trial court's evidentiary ruling."

Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (quoting Wade, 333 F.3d at 59).

> Of course, habeas corpus relief does not lie for errors of state law, and that
> necessarily includes erroneous evidentiary rulings.  The inquiry, however, into
> possible state evidentiary law errors at the trial level assists [the Court] in
> ascertaining whether the appellate division acted within the limits of what is
> objectively reasonable.

Id. (internal quotation marks and citations omitted).  Second, if the ruling was proper pursuant to

state evidentiary rules, the federal court must "consider whether the evidentiary rule is 'arbitrary

or disproportionate to the purposes it is designed to serve.'"  Id. (quoting United States v.

Scheffer, 523 U.S. 303, 308 (1998)).  "A state evidentiary rule is 'unconstitutionally arbitrary or

disproportionate only where it has infringed upon a weighty interest of the accused.'"  Id.

(quoting Scheffer, 523 U.S. at 308).[20]

In this case, the trial court's decision to exclude this questioning cannot be said to be erroneous as a matter of New York evidentiary law. New York's evidentiary rules regarding relevancy parallel Rules 401, 402, and 403 of the Federal Rules of Evidence. Relevant evidence is admissible, evidence is relevant if it tends to prove the existence or non-existence of a material fact, but "[a] court may, in its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury." People v. Primo, 96 N.Y.2d 351, 355 (2001); see also Fed. R. Evid. 401-03. "Evidence of merely slight, remote or conjectural significance will ordinarily be insufficiently probative to outweigh these countervailing risks." Primo, 96 N.Y.2d at 355 (internal quotation marks and citation omitted). Additionally, a trial judge is afforded "wide discretion in making evidentiary rulings." People v. Carroll, 95 N.Y.2d 375, 385 (2000).

Here, the court determined that the testimony was not probative of any issue relevant to the case. (Trial Tr., at 818). It is objectively reasonable that the court would determine that cross-examination into the relationship of Perry and Williams several months after the date of the attack failed to support a material fact at trial and was not sufficiently probative of Williams'

---

[20] Additionally, I note that, even prior to AEDPA's statutory changes to a federal court's standard of review,

> [T]he Supreme Court had a "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." The Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted."

Hawkins, 460 F.3d at 244 (quoting Crane, 476 U.S. at 689, 690).

credibility.  The judge could properly use his discretion to determine that the current relationship

of the victims was collateral would only confuse the jury.  Moreover, defense counsel was given

ample opportunity to cross-examine Williams and elicit other, relevant, credibility issues,

including prior convictions, prior inconsistent statements, and alcohol use.  (See id. at 781-88,

792-93, 800-02).  Accordingly, the claim should be denied.

### 6.    *Identification Notice (Claim 6)*

Petitioner asserts the state court erred in determining that the prior photo identification by

Provenzano was confirmatory.  Specifically, Petitioner argues that the court did not correctly

apply the standard set forth in People v. Rodriguez, 79 N.Y.2d 445 (1992), and that the

prosecution's failure to comply with the requirements of N.Y. Crim. Proc. Law §§ 710.30(1)(b),

(3) should have precluded Provenzano's identification at trial.  (See Appellant Br., at 66; see also

Ex. 14).  Respondent contends that this claim fails to present a federal question.  (See Resp't

Mem., at 43-46).

It is clear from the arguments presented on direct appeal that this claim raised issues of

state law only.  Petitioner's appellate brief did not cite federal cases or state cases employing

constitutional analysis.  Nor did it include language or assert facts so mainstream as to call to

mind federal notions of due process in the context of an unnecessarily suggestive pretrial

identification.  See Daye, 696 F.2d at 194; see also Manson v. Brathwaite, 432 U.S. 98 (1977).

Accordingly, Petitioner's argument concerning the "confirmatory" nature of Provenzano's

identification presented a question of state law only.  Wiggins v. Greiner, 132 F. App'x 861, 865

n.3 (2d Cir. 2005) (summary order) (citing Estelle, 502 U.S. at 67-68).  Similarly, Petitioner's

argument regarding the prosecution's failure to comply with state procedural rules does not raise

a federal question.  See, e.g., Brown v. Woods, No. 07-cv-10391, 2010 WL 2605744, at *4

(S.D.N.Y. June 29, 2010) (claim alleging state failed to sufficiently notify petitioner pursuant to N.Y. Crim. Proc. Law § 710.30 "raises solely an issue of state law"); Dotson v. Ercole, No. 06-cv-7823, 2009 WL 1615997, at *2 (S.D.N.Y. June 9, 2009) ("[t]he Constitution does not guarantee a right to advance notice of identification testimony"); Espinal v. Duncan, No. 00-cv-4844, 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (claim alleging non-compliance with § 710.30 is state law error not reviewable by federal *habeas* court). Accordingly, this claim must be denied.

### 7.   *Excessive Sentence (Claim 7)*

The final ground raised in the petition asserts that Petitioner's sentence is excessive and should be mitigated on account of the "weak evidence" supporting his conviction. (Appellant Br., at 67). Respondent contends, in part, that this claim is unexhausted because, although raised on direct appeal to the Second Department, it was not raised within the letter seeking leave to appeal to the New York Court of Appeals. (See Resp't Mem., at 46-47).

Petitioner's letter requesting leave to appeal to the Court of Appeals specifically states that "[w]e seek leave to appeal only pure law issues within the jurisdiction of this court, that is points I-V of our main brief and the points of our reply brief." (Ex. 25, at p. 13). The excessive sentence claim was raised as "Point VI" of the appellate brief and was not raised in the reply brief. (See Appellant Br., at v, 66; see also Ex. 23). It is well-settled that, where an application for leave to appeal identifies specific claims, those claims not identified are not fairly presented to the state's highest court and remain unexhausted for purposes of federal *habeas* review. McKinnon, 422 F. App'x at 75; Jordan v. Lefevre, 206 F.3d 196, 198-99 (2d Cir. 2000); see also Figueroa v. Kelly, No. 95-cv-216, 1995 WL 702327, at *2 (S.D.N.Y. Nov. 29, 1995) (citing Grey, 933 F.2d at 120) ("If a petitioner limits the issues to be reviewed in a letter application to

the New York Court of Appeals, the other claims presented in his or her Appellate Division brief are not deemed exhausted . . . [but] should be deemed procedurally forfeited for purposes of federal habeas review where the petitioner is now procedurally barred from presenting those claims to the state court."). The sentencing claim raised on direct appeal is therefore unexhausted and, under New York law, Petitioner is procedurally barred from attempting to seek further review in state court. Petitioner may not file a second application seeking leave to appeal to the New York Court of Appeals. N.Y. Ct. Rules § 500.20(a)(2). Additionally, because this claim was appealed to the Second Department and denied on the merits, Petitioner may not seek further collateral review. N.Y. Crim. Proc. Law §§ 440.10(2)(a) 440.20(1). "Because [petitioner] can no longer obtain state-court review of his present claim[ ] on account of his procedural default, [the] claim[ is] now . . . deemed exhausted." DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (per curiam). Petitioner has not asserted cause and prejudice for his default, nor argued that a fundamental miscarriage of justice will result. Accordingly, this Court is precluded from further review of this claim.[21]

## IV. CONCLUSION

For the reasons set forth above, I conclude -- and respectfully recommend that Your

---

[21] Moreover, I note that it is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam). At the time of the offense, New York law permitted a second felony offender to receive determinate sentences of twenty-one years imprisonment for convictions of attempted murder in the second degree and assault in the first degree. See N.Y. Penal Law § 70.02(1)(a) (classifying attempt to commit second degree murder and first degree assault as Class B violent felony offenses); id. § 70.06(1) (defining second felony offender); id. § 70.00(6) (requiring second felony offender who has committed violent felony offense to be sentenced pursuant to § 70.06); id. § 70.06(6)(a) (requiring second felony offender currently convicted of a Class B violent felony offense to receive a determinate sentence of at least eight years and not more than twenty-five years imprisonment).

25

Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists

would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that

he was denied a constitutional right, I recommend that no certificate of appealability be issued.

See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Kenneth M. Karas, at the Hon. Charles L. Brieant, Jr.

Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York

10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated:  **October 18**, 2011
White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

26

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Kenneth M. Karas
United States Courthouse
300 Quarropas Street
White Plains, New York  10601

Melvin McCoy Miles, *pro se*
06-R-2048
Green Haven Correctional Facility
594 Route 216
Stormville, New York 12582-0010

William V. Grady, Esq.
Office of the Dutchess County District Attorney
236 Main Street
Poughkeepsie, NY 12601